UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAIR LABORATORY PRACTICES ASSOCIATES AND NPT ASSOCIATES, | :<br>:<br>: |
| Plaintiffs, | : **JURY TRIAL DEMANDED**<br>:<br>: CIVIL ACTION NO. |
| v. | :<br>: |
| CHRIS RIEDEL AND HUNTER LABORATORIES, LLC, | :<br>:<br>: |
| Defendants. | : |

**COMPLAINT FOR BREACH OF CONTRACT, CONVERSION AND UNJUST ENRICHMENT**

For their complaint Plaintiffs, Fair Laboratory Practices Associates and NPT Associates, state as follows:

## I.     THE PARTIES

1.     Plaintiff FAIR LABORATORY PRACTICES ASSOCIATES ("FLPA") is a Delaware general partnership.  The following are FLPA's general partners: Andrew Baker (UK citizen residing in Monaco); Richard Michaelson (New Jersey resident); and Mark Bibi (New York resident).

2.     Plaintiff NPT ASSOCIATES ("NPT") is a Delaware general partnership.  The following are NPT's general partners: Andrew Baker (UK citizen residing in Monaco); Jerry Tice (Kentucky resident); and Thomas Golubic (New Jersey resident).

3.     Defendant HUNTER LABORATORIES, LLC ("Hunter") is a limited liability company organized and existing under the laws of California that is engaged in the commercial reference laboratory business.  Defendant CHRIS RIEDEL ("Riedel") is an individual and

California resident who is the sole and Managing Member of Hunter and is engaged in the commercial reference laboratory business.

## II.     JURISDICTION AND VENUE

4.      Plaintiffs bring their complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5.      A substantial part of the events giving rise to this claim occurred within the District of New Jersey, and venue is therefore appropriate in this Court pursuant to 28 U.S.C. § 1391(a).

## III.     FACTUAL BACKGROUND

6.      This is a very simple and basic breach of contract action.  Plaintiffs and Defendants entered into a litigation sharing agreement (the "Agreement") with respect to several pending and future lawsuits that each had filed against clinical laboratory companies.  Upon the settlement of the first lawsuit, Defendants refused to pay Plaintiffs their share of the settlement proceeds in clear violation of the Agreement, subsequently claiming that an order of the United States District Court for the Southern District of New York in an unrelated action brought by Plaintiffs (the "New York action") prohibited them from making the payment.  After the settlement of the second lawsuit, however, Defendants paid Plaintiffs their share of the settlement proceeds from the second lawsuit, evidencing Defendants' recognition of the Agreement's validity.  Plaintiffs bring this action to recover their share of the settlement proceeds from the first lawsuit and to confirm that the New York action does not prohibit such payment.

The Contract

7. Plaintiffs and Defendants are relators in separate *qui tam* actions against clinical laboratory companies stemming from fraudulent practices by those companies related to their generation of Medicare and Medicaid business.

8. On May 26, 2010, Plaintiffs and Defendants entered into the Agreement, a written contract entitled "Qui Tam Relator Sharing Agreement and Assignment," a copy of which is attached hereto as Exhibit A.

9. Defendant Riedel signed the Agreement on behalf of himself and on behalf of Defendant Hunter.

10. Under the terms of the Agreement, Plaintiffs and Defendants agreed to divide the proceeds of their respective actions, up to a certain amount, with no additional limitations that are relevant here.

11. Section 1(a) of the Agreement states that each of Defendants Hunter and Riedel "hereby sells, assigns, transfers and conveys to [Plaintiffs] 15% of the Net Qui Tam Award . . . to which he or it is, or at any time hereafter shall become, entitled in any false claims lawsuits brought by them, as relators, against Quest Diagnostics, Inc., Laboratory Corporation of America and other affiliated defendants filed and pending in California, Florida, Georgia, Massachusetts, Michigan, Nevada and Virginia."

12. The Agreement also states, in Section 1(c)(i), that "Riedel hereby unconditionally guarantees to [Plaintiffs] the prompt payment when due of any and all liabilities and obligations of Hunter to either of the Partnerships under this Agreement."

13. Additionally, the Agreement states in Section 1(b)(i) that Plaintiff FLPA "hereby sells, assigns, transfers and conveys to Riedel, for himself and on behalf of Hunter, their

3

respective successors and assigns 15% of the Net Qui Tam Award to which FLPA is, or at any time hereafter shall become, entitled in the false claims lawsuits brought by it, as relator, against Quest Diagnostics, Inc., and other affiliated defendants filed and pending in the United States District Court for the Southern District of New York, only to the extent that the recovery is based on laboratory testing services provided in California, Florida, Georgia, Massachusetts, Michigan, Nevada and Virginia, but subject, however, to 1(d)."

14. The Agreement further states in Section 1(b)(ii) that Plaintiff NPT "hereby sells, assigns, transfers and conveys to Riedel, for himself and on behalf of Hunter, their respective successors and assigns, 15% of the Net Qui Tam Award to which NPT is, or at any time hereafter shall become, entitled in the false claims lawsuits brought by it, as relator, against any clinical laboratory filed under seal and pending in the United States District Court for the Southern District of New York, only to the extent that the recovery is based on laboratory testing services provided in California, Florida, Georgia, Massachusetts, Michigan, Nevada and Virginia, but subject, however, to 1(d)."

15. The Agreement states in Section 2 that "Payments of all amounts assigned pursuant to" the provisions quoted above "shall be made, pro rata, as and to the extent that a Net Qui Tam Award is received by each relator, within 5 business days after receipt, to an account or accounts designated in writing by the assignee or assignees to which the payment is due."

16. In Section 1(d), the Agreement defines "Net Qui Tam Award" as "all rights . . . to receive a portion of the damages and other recoveries awarded to the United States and any named state, including, but not limited to, multiple damages, penalties and interest, that may result from the qui tam lawsuits . . . , and all payments thereof actually received by such relator or relators," excluding attorneys' fees and expenses.

The California Quest Settlement

17. In 2005, Defendants filed a *qui tam* action against Quest Diagnostics, Inc. ("Quest"), Laboratory Corporation of America ("LabCorp") and other related entities in San Mateo County Superior Court, California (the "California action"). *State of California ex rel. Hunter Laboratories, LLC et al. v. Quest Diagnostics Inc., et al.*, San Mateo Superior Case No. 450691.

18. In May 2011, the California action against Quest settled for $241 million—the largest recovery in the history of California's False Claims Act.

19. As relators in the California action, Defendants received a portion of the Quest settlement. That portion falls within the scope of the Agreement and meets the definition of Net Qui Tam Award in Section 1(d) of the Agreement. As such, Defendants owe Plaintiffs 15% of the Quest settlement proceeds, approximately $6.29 million pursuant to Section 1(a) of the Agreement.

The California LabCorp Settlement

20. In August 2011, the California action against LabCorp settled for $49.5 million.

21. As relators in the California action, Defendants received a portion of the LabCorp settlement. That portion falls within the scope of the Agreement and meets the definition of Net Qui Tam Award in Section 1(d) of the Agreement. As such, in December 2011, Defendants paid Plaintiffs $1,292,301—which represented 15% of the settlement proceeds—pursuant to Section 1(a) of the Agreement.

22. Defendants' payment evidences Defendants' recognition that there is a valid Agreement between Plaintiffs and Defendants.

The Quest Dismissal in the Southern District of New York

23. In 2005, Plaintiff FLPA filed the New York action, a *qui tam* action against Quest and Unilab Corp. ("Unilab"). *United States ex rel. Fair Laboratory Practices Associates v. Quest Diagnostics Inc., et al.*, Case 1:05-cv-05393-RPP.

24. On April 5, 2011, the district court dismissed the New York action, ruling that, because one of the partners in FLPA, Mark Bibi, had served as general counsel for Unilab Corp. (which later was acquired by Quest), neither Bibi nor FLPA could serve as a relator in a *qui tam* case against Unilab or Quest because, in so doing, Bibi would be in breach of his ethical obligations. *United States ex rel. Fair Laboratory Practices Associates v. Quest Diagnostics Inc.*, 2011 WL 1330542, at *11 (Apr. 5, 2011). The district court ruled that "FLPA, its general partners, and its counsel, are disqualified from this suit and any subsequent suit based on these facts." *Id.* at *14. Nothing in the district court's order purported to undermine, or even to address, the validity of the Agreement. Nor does the order express or imply that Defendants—who were never before the district court—are excused from performing under the Agreement or can reclaim title to proceeds they sold in 2010. A copy of the district court's order is attached hereto as Exhibit B.

The Dispute

25. On July 6, 2011, Defendants notified Plaintiffs that they would not be making the 15 percent payment for the Quest settlement in the California action. Defendants' counsel asserted that the district court's order dismissing the New York action somehow "prohibits the 15% payment we had negotiated for the Quest cases." Despite his assertions, Defendants' counsel has not identified any language contained in the district court's order that excuses

6

performance under the Agreement. Defendants have refused to make the contractually required payment unless a court order authorizes them to do so.

26. Despite repeated requests, Plaintiffs have never received the 15 percent payment that Defendants are required to pay under the Agreement.

27. Defendants' counsel has confirmed to Plaintiffs' counsel that the funds owed to Plaintiffs under the Agreement as a result of the Quest settlement in the California action have been held in escrow since on or about July 6, 2011.

### IV.   CLAIMS FOR RELIEF

#### Count I: Breach of Contract

28. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 27 as if fully set forth herein.

29. Plaintiffs have performed all acts required of them under the Agreement or have offered to perform all of the obligations required of them under the Agreement.

30. To date, Defendants are in breach of the Agreement in that they have not provided payment to Plaintiffs of the 15 percent of Defendants' "Net Qui Tam Award" for the Quest settlement in the California Action.

31. This breach of the Agreement by Defendants is material.

32. Plaintiffs have been damaged and continue to be damaged as a consequence of Defendants' breach of the Agreement in an amount to be determined at trial.

#### Count II: Conversion

33. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 32 as if fully set forth herein.

34. On May 26, 2010, Defendants sold, assigned, and transferred to Plaintiffs 15% of the Net Qui Tam Award for the Quest settlement in the California Action. Accordingly, under

applicable law Defendants do not retain a legal or equitable interest in any portion of the award they sold, assigned, and transferred.

35. Plaintiffs have legal and equitable title to the $6.29 million in funds they purchased under the Agreement.

36. Defendants have knowingly and intentionally exercised dominion and control over Plaintiffs' Net Qui Tam Award by keeping the discrete proceeds from that Award in an escrow account that Defendants control.

37. Despite Plaintiffs' repeated requests, Defendants continue to deprive Plaintiffs of possession and use of the funds, in contravention of Plaintiffs' property rights.

### Count III: Unjust Enrichment

38. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 37 as if fully set forth herein.

39. Plaintiffs have agreed to pay Defendants their share of the settlement proceeds derived from the lawsuits Plaintiffs filed against clinical laboratory companies. Such payments to Defendants are expressly conditioned upon Defendants paying Plaintiffs their share of the settlement proceeds derived from the lawsuits Defendants filed against clinical laboratory companies.

40. Plaintiffs have alleged that Defendants breached the settlement sharing Agreement between the parties. In the event that this Agreement between Plaintiffs and Defendants is found to be invalid, it would be inequitable for Defendants to share in the settlement proceeds derived from Plaintiffs' lawsuits without equally compensating Plaintiffs.

41. As a result of Defendants' conduct, they have unjustly been enriched in the amount of approximately $6.29 million.

**PRAYER FOR RELIEF**

In light of the foregoing, Plaintiffs respectfully pray that this Court:

42. Enter judgment in their favor and against the Defendants on Count I of the Complaint;

43. Award Plaintiffs all damages they sustained as a result of Defendants' conduct pursuant to Count I;

44. Enter judgment in their favor and against the Defendants on Count II of the Complaint;

45. Award Plaintiffs the value of the property converted in the sum of $6.29 million as a result of Defendants' conduct pursuant to Count II;

46. Enter judgment in their favor and against the Defendants on Count III of the Complaint;

47. Award Plaintiffs all damages they sustained as a result of Defendants' conduct pursuant to Count III;

48. Award reasonable attorneys' fees and costs; and

49. Award such other relief available under the law that may be considered appropriate under the circumstances, including other fees and costs of this action to the extent allowed by the law.

Respectfully submitted,

  /s/ Isaac Nesser
Isaac Nesser, Esq.
Andrew H. Schapiro, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Sam S. Sheldon, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
777 6th Street, NW, 11th Floor
Washington, DC 20001

ATTORNEYS FOR PLAINTIFFS
FAIR LABORATORY PRACTICES
ASSOCIATES AND NPT ASSOCIATES