## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FAIR LABORATORY PRACTICES ASSOCIATES AND NPT ASSOCIATES,** | Civ. No. 14:2581(WJM) |
| **Plaintiffs,** | |
| v. | **OPINION** |
| **CHRIS RIEDEL AND HUNTER LABORATORIES, LLC,** **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action, Plaintiffs Fair Laboratory Practice Associates and NPT Associates seek to enforce a *qui tam* award sharing agreement they entered into with Defendants Chris Riedel and Hunter Laboratories, LLC. This matter comes before the Court on Defendants' motion for judgment on the pleadings, Plaintiffs' cross-motion for summary judgment,[1] and non-party Quest Diagnostic Inc.'s motion for leave to appear *amicus curiae*. For the reasons stated in this opinion, Plaintiff's cross-motion for summary judgment is **GRANTED**. The motions filed by Defendants and non-party Quest are **DENIED**. Judgment will be entered in favor of Plaintiffs.

### I.    BACKGROUND

Plaintiffs Fair Laboratory Practices Associates ("Fair Laboratory") and NPT Associates ("NPT") are both Delaware partnerships formed for the purpose of prosecuting *qui tam* actions. Fair Laboratory's principle place of business is New Jersey and its CEO is Mark Bibi. Unless otherwise noted, the Court will refer jointly to Fair Laboratory and NPT as "Fair Laboratory" or "Plaintiffs." Defendant Hunter Laboratories, LLC ("Hunter") is a limited liability company that is organized under the laws of California and is in the commercial reference laboratory business. Defendant Chris Riedel is a California resident and Hunter's sole managing member. Unless otherwise noted, the Court will refer jointly to Hunter and Riedel as "Hunter" or "Defendants."

Plaintiffs and Defendants are both relators in separate *qui tam* actions against clinical laboratory companies. In their respective *qui tam* actions, the parties accuse certain

---

[1] Pursuant to Fed. R. Civ. P. 12(d), the Court converted a cross-motion for judgment filed by Plaintiffs into a cross-motion for summary judgment.

laboratory companies of fraudulent conduct in connection with their generation of Medicare and Medicaid business.  Two of those *qui tam* actions (both filed in 2005) are of particular importance in this case.  First is a lawsuit Fair Laboratory filed in the Southern District of New York (hereinafter, "the New York Action") against Quest Diagnostics, Incorporated ("Quest") and Unilab Corporation ("Unilab").   Second is an action Defendants filed against Quest, Unilab, and other Defendants in California state court (hereinafter, "the California Action").  In 2009, Fair Laboratory and its counsel met with representatives from the State of California, Riedel, and Riedel's counsel, to discuss the New York Action.  Defendants have also indicated that an Assistant United States Attorney was present by telephone.  At around the same time, Fair Laboratory represented to Defendants that its CEO, Mark Bibi, formerly served as Unilab's general counsel from 1993 to 2000.  With this information out in the open, the parties began negotiating a *qui tam* relator sharing agreement.

Following negotiations, the parties entered into a "Qui Tam Relator Sharing Agreement and Assignment" (hereinafter, "the Agreement") in May 2010.  The Agreement provides that the parties would share with each other portions of *qui tam* awards they may obtain in the future. Specifically, the Agreement provides that Defendants will assign to Plaintiffs 15% of any *qui tam* award they may recover in certain actions, including any award they may recover in the California Action.  In return, Plaintiffs agreed to assign to Defendants 15% of any award they may receive in the New York Action.  However, the Agreement provides that neither party would be required to share an amount exceeding $15 million. In the Agreement, the parties also represented that "each of the [parties]…acknowledges that he or it has made his or its own evaluation of the [*qui tam*] lawsuits…and the transactions provided for in this Agreement, and is not relying on any information furnished by or on behalf of the other party or parties or any person or entity."  (Agreement at § 3(b)).  The parties do not dispute that a primary purpose of the Agreement was to hedge the risks associated with bringing their *qui tam* suits.  In other words, even if one party recovered nothing from its own *qui tam* action(s), it still had the chance to recover a portion of shared *qui tam* proceeds under the Agreement.

Fair Laboratory's efforts in the New York Action were unsuccessful.  Defendants in the New York Action (hereinafter, "The New York Defendants") moved for dismissal on the grounds that Bibi disclosed to Fair Laboratory confidential information he obtained when he served as Unilab's general counsel.  According to the New York Defendants, Bibi's sharing of Unilab's confidential information was a breach of his duty of loyalty to his former client and a violation of the New York Code of Professional Responsibility. Fair Laboratory opposed the motion to dismiss on the grounds that Bibi's conduct fell within the New York Code's future crime exception.

The judge presiding over the New York Action, the Honorable Robert P. Patterson, Jr., agreed with the New York Defendants and granted their motion to dismiss.  In an April 5, 2011 opinion and order (hereinafter, the "New York Order"), Judge Patterson held that

Bibi's sharing of Unilab's confidential information violated the New York Code of Professional Responsibility, and further concluded that the crime fraud exception did not apply.   Consequently, Judge Patterson dismissed Fair Laboratory's complaint and disqualified Fair Laboratory, its general partners, and its counsel from the New York Action or any subsequent suit premised on the same facts.   Later, the Second Circuit affirmed Judge Patterson, concluding that that the decision to disqualify Fair Laboratory and its partners from the New York Action and any future related *qui tam* lawsuits was not an abuse of discretion.   *U.S. v. Quest Diagnostics Inc.*, 734 F.3d 154 (2d Cir. 2013).

The New York Order did not rule on the validity of the Agreement, nor did Judge Patterson suggest that his opinion affected the Agreement's enforceability.   That said, the New York Order did reference the Agreement by noting that "Bibi also 'parlayed his information into a financial interest' in another *qui tam* suit against Unilab in California….[and that] [Fair Laboratory] is sharing information with the relators in that case."   Despite that language, Defendants have repeatedly represented that the only documents they received related to the New York action were five copies of Fair Laboratory's amended complaints.   Defendants have further represented that when prosecuting the California Action, they did not use any information they received from Bibi or Fair Laboratory.[2]

One month after Judge Patterson dismissed the New York Action, Defendants in this case reached a $241 million settlement with Quest in the California Action.   Because Defendants were relators in the California Action, they received a portion of the settlement proceeds.[3]   Under the terms of the Agreement, that award would be subject to the 15% sharing provision.

In July 2011, however, Defendants informed Plaintiffs that they would not pay 15% of the proceeds they received in the California Action, the reason being that the New York Order prohibits Defendants from paying Plaintiffs a portion of any award obtained in any lawsuit against Quest.   Rather than pay Plaintiffs 15% of what they received in the California Action, Defendants have placed those funds – a sum total of $6.29 million – in an escrow account.

To this date, Defendants have refused to pay Plaintiffs 15% of what they received in the California Action.   In response, Plaintiffs filed the instant lawsuit alleging (1) breach

---

[2] Specifically, Defendants instructed Quest that they "learned nothing from [Fair Laboratory] that was of any relevance to [their] theories in California; or that [they] did not already know; and [their] interactions with [Fair Laboratory] and its counsel have been minimal."  (April 13, 2011 Letter from McCarthy to Raskin).

[3] Because the State of California intervened in the California Action, Defendants received only a portion of the $241 million settlement.

of contract; (2) conversion; and (3) unjust enrichment.  Defendants then filed a motion for judgment on the pleadings.  Plaintiffs then responded with a cross-motion for judgment on the pleadings, which this Court converted into a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).

## II.   DISCUSSION

The Court will assess Defendants' submission using the standard applicable to motions for judgment on the pleadings.  Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law."  *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).  The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Id.*  In deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents relied on by plaintiffs and attached to the motion, and matters of public record.  *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

Plaintiffs' submission will be subject to a summary judgment standard.  Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

### A.  Choice of Law

There is a threshold issue as to which substantive law applies; Plaintiffs contend that this Court should apply the law of New Jersey, whereas Defendants argue for California law.  In diversity cases, a federal court must apply the forum state's choice-of-law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999).  The New Jersey choice-of-law analysis involves the two-part "most significant relationship" test laid out in the Restatement (Second) of Conflict of Laws.  *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008).  "[T]he initial step in choice-of-law questions is a determination of whether there is a distinction *in the laws* of particular jurisdictions."  *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006) (emphasis in original) (quotations omitted).  If there is no substantive

4

difference between the potentially applicable laws, the law of the forum state will apply. *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007). If there is a conflict, the Court will determine which jurisdiction has the most significant relationship to the claim. *Id*. at 22 (citing *Gantes v. Kason Corp.*, 145 N.J. 478, 487 (1996)).

The Court concludes that there is no conflict between New Jersey and California law with respect to the issues presented in this case. The legal requirements for Plaintiffs' causes of action – breach of contract, conversion, and unjust enrichment – are the same under New Jersey and California law. *See, e.g., AgroLabs, Inc. v. Innovative Molding, Inc.*, No. 2:13-6169(KM)(MCA), 2014 WL 3535560, *2 n.2 (D.N.J. July 16, 2014) (breach of contract); *Everest Reinsurance Co. v. Int'l Aerospace Ins. Services, Inc.*, No. 11-5332(FLW), 2012 WL 3638702, *3 (D.N.J. Aug. 22, 2012) (conversion); *In re Toshiba America HD DVD Mktg. and Sales Practices Litig.*, 08-939 (DRD), MDL No. 1956, , 2009 WL 2940081, *14 (D.N.J. Sept. 11, 2009) (unjust enrichment). Similarly, with respect to Defendants' illegality defense, Defendants themselves concede that both California and New Jersey law provide that where the object of a contract is illegal, it will be declared null and void for violating public policy. *See* Defendants' Motion at 12 (citing *McIntosh v. Mills*, 121 Cal. App. 4th 333, 344 (2004) and *Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10 (1992)). And both New Jersey and California rely on §265 of the Restatement of Contracts (Second) when assessing the excuse of frustration. *Compare JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc.*, 431 N.J. Super. 233, 245 (App. Div. 2013) *with FPI Development, Inc. v. Nakashima*, 231 Cal.App.3d 367, 399 (1991). Finally, the affirmative defense of unclean hands is the same in both jurisdictions. Compare *Borough of Princeton v. Mercer Cnty. Improvement Auth.*, 169 N.J. 135, 157 (2001) with *Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298, 322 (2002). Because there is no conflict of laws in this case, the Court will apply the law of forum state: New Jersey.

## B. Plaintiff's Breach of Contract Claim

According to Defendants, Plaintiffs have breached the Agreement by refusing to pay Defendants 15% of what they recovered in the California Action. To prevail on its breach of contract claim, Plaintiffs must show that a valid contract existed, that Defendants materially breached the contract, and that Plaintiffs suffered damages as a result. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F.Supp.2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's*, 199 N.J.Super. 212, 223 (1985)). In support of their breach of contract claim, Defendants contend that the parties voluntarily entered into the Agreement, which required, among other things, that Plaintiffs pay Defendants 15% of what they may recover in the California Action. Defendants acknowledge that they received a settlement award in the California Action, and they do not dispute that the California Action is subject to the Agreement. Moreover, they concede that they have refused to pay Plaintiffs 15% of the California Action settlement.

Rather than deny Plaintiffs' factual allegations, Defendants challenge the enforceability of the contract, arguing that the New York Order excuses them from performance. In the

alternative, Defendants assert the affirmative defenses of unclean hands and unjust enrichment. After reviewing the relevant materials, the Court rejects Defendants' position. Defendants entered into this risk sharing agreement after independently evaluating the strength of Plaintiffs' position in the New York Action. Moreover, Defendants were fully aware that Bibi had formerly served as counsel to Unilab, and therefore assumed the risk that Plaintiffs potentially faced disqualification. The Court further concludes that Defendants' affirmative defenses and excuses for non-performance are unavailing. A more detailed explanation of the Court's decision follows.

### a. Whether Judge Patterson's Order Makes Payment Under the Contract Illegal

Defendants argue that the New York Order invalidates the Agreement because it makes payment under the Agreement illegal. In order to assess Defendants' argument, the Court must look to the language of the New York Order. A court order "must ordinarily be interpreted by examination of only the 'four corners' of the document." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 286 (3d Cir. 1991) (citing *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 961 (3d Cir. 1981)). When making such a determination, it is this Court's "responsibility to construe [an order] as to give effect to the intention of the court, not to that of the parties." *Id.* (citing *United States v. 60.22 Acres of Land, More or Less, Situate in Klickitat County, State of Washington*, 638 F.2d 1176, 1178 (9th Cir. 1980)). Moreover, prohibited conduct should not be implied from a court order. Rather, the order should be interpreted to proscribe only conduct that it sufficiently describes as prohibited. *See Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971).

Applying these principles, the Court concludes that nothing in the New York Order can be interpreted to prohibit Fair Laboratory from receiving a share of the California Action settlement pursuant to the Agreement. The New York Order disqualifies "FLPA, its general partners, and its counsel from this suit and any subsequent suit based on these facts." (New York Order at 25). Therefore, while the New York Order prohibits Fair Laboratory from being a party to a subsequent suit against Quest based on similar facts, it says nothing of its right to recover under any profit sharing agreement with Defendants. [4] Indeed, the New York Order in no way purports to govern the legal relationship between Fair Laboratory and Hunter, which comes as no surprise since Hunter was not a party to the New York Action.

When the New York Order does reference the Agreement, it does so only in passing, noting that "Bibi also parlayed his information into a financial interest in another *qui tam* suit against Unilab pending in California. FLPA is sharing information with the relators in

---

[4] Moreover, the phrase "any subsequent suit based on these facts" cannot reasonably be interpreted to encompass the California Action; the reason being that the California Action was instituted well before Judge Patterson handed down the New York Order.

that case." (New York Order at 24) (citations and quotations omitted). However, that statement does not indicate that the Agreement is invalid or void as a matter of public policy. Moreover, the Agreement requires only that the parties share portions of certain *qui tam* awards; it says nothing of any obligation to share confidential information regarding Quest.[5] Consequently, the Court does not interpret the New York Order to prohibit Fair Laboratory from receiving a portion of the California Settlement.

The decisions Hunter cites in support of its position are readily distinguishable from the case at bar. Specifically, Hunter relies on a number of decisions in which fee agreements that ran afoul of attorney ethics rules were held to be unenforceable on public policy and illegality grounds. In *McIntosh v. Mills*, 121 Cal. App. 4th 333, 344 (2004), for example, a layperson entered into an agreement with an attorney in which the latter agreed to pay the former a portion of attorney's fees received in a lawsuit. After the attorney refused to abide by the agreement, the layperson sued for his share of attorney's fees. The court ruled in favor of the attorney and concluded that the contract was unenforceable because the applicable state ethics rules barred lawyer/layperson fee-sharing agreements. *McIntosh* is distinguishable, however, because the court in that case noted that very purpose of the agreement – the sharing of attorney's fees – violated ethics rules. Here, the consideration exchanged under the Agreement was that each party promised to share proceeds from certain *qui tam* actions.[6] Because Hunter points to no authority that prohibits agreements to share potential proceeds from *qui tam* lawsuits, its illegality argument fails.

### b.  *Whether the Purpose of the Agreement Has Been Frustrated*

Next, Defendants argue that that the doctrine of frustration excuses their performance. Frustration of purpose excuses non-performance where "after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made…unless the language or the circumstances indicate the contrary." *Unihealth v. U.S. Healthcare, Inc.*, 14 F.Supp.2d 623, 634 (D.N.J. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS §265 (1981)). However, the doctrine of frustration will not excuse performance where the frustration is not sufficiently substantial to be regarded as outside the risk the parties assumed under the contract. *Id*. at 635 (citing *Edwards v. Leopoldi*, 20 N.J. Super. 43, 55 (App.Div. 1952)).

---

[5] Hunter has represented that it did not use any confidential information from Fair Laboratory when prosecuting the California Action, which means that the Agreement does not implicate Judge Patterson's concerns regarding the sharing of confidential information.

[6] Fair Laboratory instituted the New York Action well-before the parties entered into the Agreement. The Agreement therefore does not contain a provision in which Fair Laboratory agrees or promises to file suit against Quest; rather, the sole focus of the Agreement is an obligation to share potential *qui tam* awards.

7

The Court concludes that the doctrine of frustration does not apply in this case. First, the basic assumption underpinning the Agreement was that a party would receive a portion of a *qui tam* award only if the other party received proceeds from a listed *qui tam* action, whether by way of settlement or a favorable judgment. The parties did not assume, however, that they were guaranteed to receive payment under the Agreement. That is because there was no basic assumption that either party would be successful in prosecuting their respective *qui tam* actions. Rather, it is undisputed that these sophisticated parties entered into the Agreement in part to spread the risk and leave open the possibility for financial gain even if their own *qui tam* actions proved unsuccessful.

Moreover, Section 3(b) of the Agreement provides that each party made its own evaluation of the relevant *qui tam* lawsuits and did not rely on any information furnished by the other party. Significantly, the evidence demonstrates that Hunter knew of Bibi's former role as counsel for Unilab.[7] Therefore, it was up to Hunter to assess the potential risk that Fair Laboratory would be disqualified from the New York Action.[8] Now that such a risk has come to fruition, Hunter cannot rescind its promise to pay portions of its settlement from the California Action. Consequently, Hunter's frustration argument fails.

## C.  Affirmative Defenses:  Unjust Enrichment and Unclean Hands

Hunter then argues that it does not have to pay because doing so would unjustly enrich Fair Laboratory. Unjust enrichment is recognized as an affirmative defense in New Jersey. *See F.D.I.C. v. Modular Homes, Inc.*, 859 F.Supp. 117, 122 (D.N.J. 1994) (citing *Spiotta v. Shelter Cove Estates*, 68 N.J.Super. 450, 462 (App. Div. 1961)). Hunter's theory can prevail only if a ruling in Fair Laboratory's favor would result in Fair Laboratory receiving a benefit, the retention of which would be unjust. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 526 (1994). For basically the same reasons provided in the foregoing section, Hunter's affirmative defense fails. Upon entering the Agreement, both Hunter and Fair Laboratory knowingly bore the risk that they may end up paying over a greater *qui tam* share than they would receive. They further acknowledged that they independently investigated the lawsuits subject to the Agreement. While Hunter may have come out on the short end of the bargain, it does not follow that enforcing the Agreement would unjustly enrich Fair Laboratory.

Hunter's unclean hands defense also fails. The doctrine of unclean hands provides that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry throughout the proceedings." *A. Hollander & Son, Inc. v. Imperial Fur*

---

[7] The evidence also shows that an Assistant United States Attorney and a representative from the State of California were aware of both the New York Action and Bibi's former role at Unilab.

[8] Section 1(d)(i) caps the amount of proceeds sharable under the Agreement at $15 million. That provision further evinces the parties' intent to structure and allocate the risks (and potential rewards) associated with their *qui tam* actions.

*Blending Corp.*, 2 N.J. 235, 246 (1946). An unclean hands defense will succeed only where the plaintiff's wrongdoing is with respect to the "subject matter in suit." *Faustin v. Lewis*, 85 N.J. 507, 511 (1981). Therefore, unclean hands will serve as a defense to Fair Laboratory's claims only if Fair Laboratory has acted improperly with respect to this litigation or the Agreement itself. *See Borough of Princeton v. Board of Chosen Freeholders of Chosen Freeholders of County of Mercer*, 169 N.J. 135, 158 (2001). Hunter has failed to make such a showing. The subject matter of Fair Laboratory's lawsuit is relatively straightforward: it seeks to enforce terms of the Agreement. Hunter, however, has failed to show that Fair Laboratory has undertaken an unconscionable act with respect to the Agreement. Most notably, Hunter does not accuse Fair Laboratory of concealing information relevant to the Agreement, and instead acknowledges that it knew of Bibi's former role as Unilab counsel. And because Hunter has also failed to show that Fair Laboratory has taken an unconscionable act with respect to this litigation, its unclean hands defense is unavailing. Having found that none of Hunter's affirmative defenses apply, Fair Laboratory is entitled to judgment as a matter of law on its breach of contract claim.

## III.   QUEST'S MOTION TO FOR LEAVE TO APPEAR *AMICUS CURIAE*

Quest has filed a motion for leave to appear *amicus curiae*. Through its motion, Quest asserts that both parties to this action are at fault: Fair Laboratory has committed wrongdoing by breaching New York's Rules of Professional Conduct, whereas Hunter has also improperly benefitted because it received confidential information from Fair Laboratory. Accordingly, Quest argues that neither party should retain the funds at issue; instead, this Court should exercise equitable power under the *cy pres* doctrine and order that the money be used for charitable purposes.

The purpose of an *amicus curiae* is to the assist the court in a proceeding. A court may permit a non-party to proceed *amicus curiae* if it presents information to the court that is both timely and useful. *McDonough v. Horizon Healthcare Services, Inc.*, No. 09-571, 2014 WL 3396097, * 12 (D.N.J. Jul. 9, 2014) citing *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)). "The extent, if any, to which an amicus curiae should be permitted to participate in a pending action is solely within the broad discretion of the district court." *U.S. v. Alkaabi*, 223 F. Supp.2d 583, 592 (D.N.J. 2002) (citations omitted). Exercising that discretion, the Court will deny Quest's motion. *Cy pres* distributions occur in highly limited situations, such as where a court faces unclaimed class settlement funds, or more commonly, as a means to save testamentary charitable gifts that would have otherwise gone undistributed. *See, e.g., Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F.Supp. 477, 478 (N.D.Ill. 1993). Quest has failed to point to a single instance, however, in which a court applied the doctrine to an ordinary breach of contract dispute between two private litigants. This comes as no surprise, as courts would naturally be hesitant to use some ill-defined equitable power to rewrite or disregard mutually agreed upon contractual obligations. Because Quest has failed to show that its appearance would be useful to the

Court for the purposes of resolving this dispute, its motion for leave to appear *amicus curiae* is denied.

## IV.    CONCLUSION

For the foregoing reasons, Fair Laboratory's cross-motion for summary judgment is **GRANTED**.  Hunter's motion for judgment on the pleadings and Quest's motion for leave to appear *amicus curiae* are **DENIED**.  An appropriate order accompanies this decision.


                                        /s/ William J. Martini
                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  June 29th, 2015**