NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1755
_____

FAIR LABORATORY PRACTICES ASSOCIATES;
NPT ASSOCIATES; QUEST DIAGNOSTICS INTERNATIONAL

v.

CHRIS RIEDEL; HUNTER LABORATORIES, LLC.

Quest Diagnostics International,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-14-cv-02581)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2016

Before: AMBRO, SHWARTZ, and FUENTES, Circuit Judges

(Opinion filed: December 7, 2016)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Intervenor-Appellant Quest Diagnostics challenges the District Court's decision to seal the filed settlement agreement among Appellees (plaintiffs and defendants). They reached a settlement after the Court already had entered judgment in favor of the plaintiffs. As a result, the District Court vacated its judgment, but only after the Court requested that the Appellees file their settlement. Once filed, the Court sealed the settlement agreement over Quest's objection primarily because the agreement was filed at the Court's request. Because the public has a presumptive right to access judicial records, and that right is not simply outweighed by a court's request to file a document, we vacate the District Court's Order and remand for further proceedings.

**I.     Background**

Although Quest is not a party, its interactions with plaintiffs and defendants lead to this dispute. Plaintiffs Fair Laboratory Practices Associates and NPT Associates (collectively, "FLPA") and defendants Chris Riedel and Hunter Laboratories (collectively, "Hunter") have brought numerous *qui tam* lawsuits against Quest and other laboratories. FLPA and Hunter share the proceeds from these *qui tam* lawsuits per their profit sharing agreement.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In 2011 Quest settled with Hunter a *qui tam* lawsuit brought in California state court. That same year Quest prevailed in a *qui* tam lawsuit that FLPA brought in the Southern District of New York. That Court dismissed the lawsuit because FLPA had engaged in unethical conduct—using and disclosing Quest's privileged information in violation of the New York's Rules of Professional Conduct. *U.S. ex rel. Fair Lab. Practices Assoc's v. Quest Diagnostics Inc.*, No. 05 CIV. 5393 RPP, 2011 WL 1330542 (S.D.N.Y. Apr. 5, 2011), *aff'd sub nom. United States v. Quest Diagnostics Inc.*, 734 F.3d 154 (2d Cir. 2013). Although FLPA lost, it asked Hunter to share the proceeds Hunter received from the settlement in the California lawsuit pursuant to the *qui tam* profit-sharing agreement.

Hunter refused to pay FLPA, arguing that the Southern District of New York Court's dismissal of FLPA's lawsuit precluded enforcement of the profit-sharing agreement. FLPA then sued Hunter in the District of New Jersey alleging that Hunter owed it 15% of the California settlement. Quest moved for leave to appear as *amicus curiae*, arguing that neither party should have these funds. Instead, it urged the Court to donate the money to charity because of FLPA's ethical misconduct. The District Court granted summary judgment in FLPA's favor, holding that Hunter was still bound by the profit-sharing agreement notwithstanding the decision in the Southern District of New York. The Court also denied Quest's motion to appear as an *amicus* and rejected a charitable donation. Having entered final judgment, the District Court closed the case.

Almost two months after the Court entered final judgment, FLPA and Hunter filed a joint stipulation announcing that they had reached a settlement whereby Hunter confessed to judgment in the amount of damages the Court had already awarded. FLPA and Hunter stipulated that the Court should vacate its judgment "in furtherance of their future relationship under the Sharing Agreement." J.A. 72.

Before approving this course, the Court requested that FLPA and Hunter file their settlement agreement. They filed it along with a motion to seal. Quest moved to intervene and asked the Court to deny sealing. It granted Quest's motion to intervene, but nonetheless sealed the settlement, reasoning that the agreement would never have "seen the light of day had this Court not instructed the parties to submit it on the docket" and that the FLPA and Hunter parties had filed the settlement "assum[ing] that [it] would remain confidential." J.A. 115.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over this post-judgment order because it fully resolves the issue between the interested parties—whether the agreement should remain sealed. 28 U.S.C § 1291; *see Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir. 1986).

We review a district court's denial of a motion to unseal a judicial record for an abuse of discretion. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783 (3d Cir. 1994). This exercise of discretion, however, "is not generally accorded the narrow review reserved for

4

discretionary decisions based on first-hand observations." *In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001) (citations omitted)).

**III.   Analysis**

A strong presumption in favor of public accessibility attaches to judicial records (here the filed settlement agreement). *LEAP Sys.*, 638 F.3d at 221. The presumption of public access is a common law doctrine that predates the Constitution. It is designed to "promote[ ] public confidence in the judicial system." *Litteljohn v. Bic Corp*, 851 F.2d 673, 678 (3d Cir. 1998). The presumption is not absolute, however, and a party may "show that the interest in secrecy outweighs" public access. *Cendant Corp.*, 260 F.3d at 194 (citations omitted). To do so, the party carries the burden to demonstrate that "disclosure will work a clearly defined and serious injury." *LEAP Sys.*, 638 F.3d at 222. "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.*

A district court may not "'rely on the general interest in encouraging settlement' to justify the sealing of an agreement." *Id.* (quoting *Cendant Corp.*, 260 F.3d at 194); *Pansy*, 23 F.3d at 788 ("District courts should not rely on the general interest in encouraging settlement, and should require a particularized showing of the need for confidentiality in reaching a settlement."). Settlement confidentiality may outweigh the public's right of access, however, if: 1) disclosure would cause harm, such as revealing proprietary information; and 2) the court "specifically f[inds] that [the parties] would not have

5

entered into the settlement agreements *but for* the Court's assurance of confidentiality." *LEAP Sys.*, 638 F.3d at 222 (emphasis in original).

Here, the District Court found that the presumption of public access was outweighed by its request that FLPA and Hunter file their settlement agreement and FLPA's and Hunter's assumption that this filing would remain confidential. This does not overcome the presumption, however. For here the Court did not give a reason why disclosure would result in a particularized harm, and it does not mention whether it ever assured confidentiality in order to facilitate settlement. Notably, FLPA and Hunter reached the settlement agreement two months *after* the Court entered final judgment; any assurance of confidentiality was not the "*but for*" cause of settlement. *Cf. id*. While FLPA and Hunter may have assumed that their settlement would remain confidential once filed—a questionable assumption given Quest's involvement and interest in this case—FLPA and Hunter must still show that "disclosure will work a clearly defined and serious injury." *Cendant Corp*., 260 F.3d at 194.

In addition, the District Court too quickly discounted the public's interest. *See* J.A. 115 ("Quest does not make any strong arguments for why the Settlement Agreement contains information relevant to the public."). Regardless of Quest's interest in the terms of a settlement agreement between two of its adversaries that, as the adversaries stated, "further[s] their future relationship" to share profits from *qui tam* lawsuits against Quest and others, the public also has an interest in this settlement: it has an interest in understanding why a judge would vacate a final judgment in favor of a settlement that

purportedly just confirms the judgment. *See LEAP Sys.*, 638 F.3d at 221 ("[T]he public has an interest in knowing what terms of settlement a federal judge would approve."); *see also Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs*., 800 F.2d 339, 345 (3d Cir. 1986) ("We cannot permit the expediency of the moment to overturn centuries of tradition of open access to court documents and orders."). We therefore remand to the District Court to balance the public and private interests in this case.

* * * * *

We vacate the order of the District Court and remand the case to it for further proceedings consistent with this opinion. On remand, the Court should also consider whether there is a less restrictive option to sealing the entire agreement that could protect privacy interests (such as redacting confidential information).